*Exhibit A*

# LOAN AGREEMENT
## Including Truth-In-Lending Disclosure

| | |
|---|---|
| **Lender:** (Called "We", "Us", "Our")<br>BENEFICIAL CONSUMER DISCOUNT COMPANY D/B/A BENEFICIAL MORTGAGE CO OF PENNSYLVANIA<br>2350 MACDADE BLVD.<br>HOLMES, PA 19043 | |
| **Borrowers:** (Called "You", "Your")<br>KIMBERLY BOCELLI<br>MARIO J. BOCELLI<br>2714 S SMEDLEY ST<br>PHILADELPHIA, PA 19145 | |
| Date of Loan: 03/15/2007 | Loan Number: |

In this agreement, "you", "your" mean the Borrower(s) who signs this agreement. "We", "us" and "our" refer to the Lender. This agreement covers the terms and conditions of your loan. It is important to us that you clearly understand the features of your loan. Please read this agreement carefully, and ask us any questions you may have.

| Truth-In-Lending Disclosure | | | |
|---|---|---|---|
| **ANNUAL PERCENTAGE RATE**<br><br>The cost of your credit as a yearly rate. | **FINANCE CHARGE**<br><br>The dollar amount the credit will cost you. | **Amount Financed**<br><br>The amount of credit provided to you or on your behalf. | **Total of Payments**<br><br>The amount you will have paid after you have made all payments as scheduled. |
| 8.709% | $513,876.30 ("e") | $282,098.10 | $795,974.40 ("e") |
| **Your payment schedule will be:** | | | |

| Number of Payments | Amount of Payments | When Payments are Due ("e") |
|---|---|---|
| 1 | $2,211.04 | 04/15/2007 |
| 359 | $2,211.04 | Day 15 of each month thereafter. |
| "e" means an estimate | | |

**Assumption:** Someone buying your home cannot assume the remainder of the mortgage on the original terms.

**YOU ARE GIVING US A SECURITY INTEREST IN THE REAL PROPERTY AS DESCRIBED IN THE MORTGAGE AND LOCATED AT:**

2714 S SMEDLEY ST
PHILADELPHIA, PA 19145

| | |
|---|---|
| **Late Charge** | If your monthly installment is not paid in full within 10 day(s) after it is due, you will be charged a late charge equal to 5% of the full amount of the monthly installment. |
| **Prepayment** | You may prepay your loan in full or in part at any time. If you pay off your loan early, you may have to pay a penalty and you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges. |

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

The Settlement Statement provides your disbursements and the Itemization of the Amount Financed.

## ABOUT THE SECURITY:

| | |
|---|---|
| **Your Obligation to Insure** | You shall keep the structures located on the real property securing your loan insured against damage caused by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is canceled or expires while your loan is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below. |
| **Real Property Taxes and Homeowners Insurance** | Homeowners Insurance covering fire and other hazards on the real property security is required, naming us as a loss payee for the term of your loan. You shall pay us on the day that monthly installments are due under this agreement, an additional sum (the "Funds") to be used to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the real property; (b) leasehold payments or ground rents on the real property, if any; (c) premiums for any and all insurance required by us under this agreement and the Mortgage ("Escrow Items"). You will pay us the Funds for Escrow Items unless we waive your obligation to pay the Funds for any or all Escrow Items. We may waive your obligation to pay us Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, you will be solely responsible for paying the amounts due for any Escrow Items directly and, if we require, you shall furnish us with receipts |

evidencing such payment within such time period as we may
reasonably require.

**Title Insurance**

Title insurance on the real property security is required, naming us
as a loss payee. You must purchase title insurance or its local
equivalent protecting our lien on the real property as a condition to
obtaining your loan. You may purchase title insurance from any title
insurance provider you choose that we reasonably believe provides
sufficient financial protection to us. You request such title insurance
and authorize us to deduct the costs of the title insurance from your
loan proceeds in order to pay the title insurance provider.

**Lender's Right to Place
Hazard Insurance**

You authorize us, at our option, to obtain hazard insurance coverage
on the real property in an amount not greater than the outstanding
balance of principal and interest on your loan or, if known to be less,
the replacement value of the real property, in the event that you fail
to maintain the required hazard insurance outlined above or fail to
provide adequate proof of its existence. You authorize us to charge
you for the costs of this insurance. We may choose to add the
insurance charges to the unpaid balance of your loan, which will
accrue interest at the Contract Rate, or bill you for the annual
premium on a periodic basis. The addition of the insurance charges
due might increase the amount of your final monthly installment.
The cost of lender-placed hazard insurance might be higher than the
cost of standard insurance protecting the real property. The
lender-placed insurance will not insure the contents of the real
property or provide liability coverage. The insurance might not be
the lowest cost coverage of its type available and you agree that we
have no obligation to obtain the lowest cost coverage. We or an
affiliated company might receive some benefit from the placement
of this insurance and you will be charged for the full cost of the
premium without reduction for any such benefit. If at any time after
we have obtained this insurance, you provide adequate proof that
you have subsequently purchased the required coverage, we will
cancel the coverage we obtained and credit any unearned premiums
to your loan.

---

## ABOUT YOUR LOAN REPAYMENT:

| | | | |
|---|---|---|---|
| SCHEDULED MATURITY DATE | | 03/15/2037  PREPAID FINANCE CHARGES | $234.87 |
| MONTHS OF CONTRACT | | 360  PRINCIPAL | $282,332.97 |
| CONTRACT RATE (per year) | 8.700% | | |
| AMOUNT FINANCED | $282,098.10 | | |

**Promise to Pay**

You agree to the terms of this agreement and promise to pay us the principal (Amount Financed plus prepaid finance charges consisting of Origination Fee/Points, Closing Fee and Tax Service Fee) plus interest which is computed at a rate of 8.700% (the "Contract Rate"). You agree to pay us in monthly installments as stated in the Payments provision of this agreement. You also agree to pay us: (a) other charges as provided in this agreement; (b) credit insurance charges, if any; (c) collection costs permitted by applicable law, including reasonable attorneys' fees otherwise due under your Mortgage and (d) any other charges reflected in your settlement statement.

**Interest**

Interest will be charged on the unpaid principal until the full amount of principal has been paid. You will pay us interest at a yearly Contract Rate of 8.700%

The interest rate required by this provision is the rate you will pay both before and after any default as described in this agreement.

**Payments**

**Time and Place of Payments**

You will pay us principal and interest by paying your monthly Installments.

You will make your monthly installments to us on the same day of each month beginning on or about 04/15/2007. You will make these monthly installments every month until you have paid all of the principal and interest and any other charges described herein that you may owe under this agreement. Your monthly installments will be applied to interest before principal. If, on the Scheduled Maturity Date, 03/15/2037, you still owe amounts under this agreement, you will pay those amounts in full on that date, which amount will include interest at the then current Contract Rate or any such other rate as required by law.

You will make your monthly installments at the address shown on page one or at the address shown on your monthly billing statement or at a different place that we may give you.

**Amount of Monthly Installments**

Your monthly installments will be in the amount of $2,211.04, plus the amount of any optional insurance or funds for escrow you elected.

**Prepayment**

Subject to the prepayment penalty described below, you may prepay your loan in full or in part at any time. If you pay off your loan early, you may have to pay a penalty and you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges.

**Prepayment Penalty**

Your loan contains a prepayment penalty. If you prepay the entire outstanding balance of your loan at any time within 24 months of the Date of Loan, 03/15/2007, you agree to pay a prepayment penalty equal to 6 months interest calculated at the Contract Rate in effect at the time of prepayment on the unpaid principal balance. No

03/15/2007 14:19                           Page 4 of 6

|  | prepayment penalty will be imposed: (a) if your loan is refinanced by another loan with us; (b) after 24 months; (c) if your loan is prepaid from the proceeds of any insurance; or (d) if we sue you. |
|---|---|
| **Late Charge** | If your monthly installment is not paid in full within 10 day(s) after it is due, you will be charged a late charge equal to 5% of the full amount of the monthly installment. |
| **Bad Check Charge** | You agree to pay $20.00 each time any check or payment is made on your loan by any means, including but not limited to, a check or ACH (our Authorization to Debit Account), which is returned unpaid by your bank or other financial institution for any reason. |
| **Additional Charges** | You agree to pay any amounts actually incurred by us for services rendered in connection with the opening and servicing of your loan, as allowed by law. These amounts may include fees for appraisals, title examination, title insurance or its local equivalent, fees and taxes paid to public officials in connection with recording, releasing or satisfying the Mortgage and other taxes as shown in the Settlement Statement incorporated herein by this reference. You also agree to pay any other amounts incurred by us in connection with the servicing of your loan including any amounts that we may (but need not) pay or that are otherwise due under the Mortgage, incorporated herein by this reference. |
| **Default** | If you fail to make any monthly installment after it becomes due or fail to comply with the terms of the Mortgage, we may require that you pay us, at once and without prior notice or demand, the unpaid balance of your loan plus accrued interest and any applicable charges in this agreement as authorized. |
| **Security Interest** | You agree to give us a security interest in the real property as described in the Mortgage. |

## ABOUT OUR RELATIONSHIP:

| **Exchange of Information** | You understand and agree that we will call you from time to time to discuss your financial needs and any loan products that may be of interest to you as may be permitted by applicable law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you. |
|---|---|
| **Credit Bureau Reporting** | If you fail to fulfill the terms of your loan, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. |
| **Telephone Monitoring** | You agree that we may listen to and/or record telephone calls between you and our representatives for quality assurance purposes. |

| | |
|---|---|
| **Insurance** | Credit insurance is optional. Any applicable insurance disclosures are included with this agreement and are incorporated herein by this reference. |
| **Alternative Dispute Resolution** | The terms of the Arbitration Rider signed by you as part of your loan transaction are incorporated herein by this reference. |
| **Applicable Law** | If you do not pay the full amount of an installment when it is due, and we intend to foreclose on the Mortgage, we must comply with the provisions of Section 403 and 404 of the Act of January 30, 1974, which is known as Act No. 6, and the provisions of the Homeowner's Emergency Mortgage Assistance Act (Act No. 91 of 1983). |
| | If this loan is a first mortgage, it is a federally related loan made at an agreed rate authorized by Section 501(a), Part A, Title V, Public Law 96-221, also known as Section 1735f-7(a), Title 12, United States Code. |

If any provision of this agreement is finally determined to be void or unenforceable under any law, rule, or regulation, all other provisions of this agreement will remain valid and enforceable. Our failure to enforce any provision(s) to this agreement shall not be deemed to constitute a waiver of such term(s). In order for any amendment to this agreement to be valid, it must be agreed to by you and us.

You acknowledge that before signing this agreement, you have read and received this agreement which includes the Federal Truth-in-Lending disclosure and, as applicable, any other riders and/or disclosures incorporated herein by reference. By signing below, you agree to observe the terms and conditions of this agreement.

ANY ADVANCE OF FUNDS PURSUANT TO THIS LOAN AGREEMENT AND THE MORTGAGE WHICH SECURES THE AGREEMENT MAY, IN THE EVENT OF ANY DEFAULT, RESULT IN THE LOSS OF YOUR HOME OR OTHER REAL PROPERTY PLEDGED AS SECURITY FOR YOUR LOAN.

Borrower: _____ Date: 3-15-07
KIMBERLY BOCELLI

Borrower: _____ Date: 3-15-07
MARIO J. BOCELLI

Witness: _____

Deed of Trust/Mortgage Information:
Borrower Name(s): KIM BOCELLI AKA KIMBERLY BOCELLI AND MARIO BOCELLI
Original Beneficiary/Mortgagee: BENEFICIAL CONSUMER DISCOUNT COMPANY D/B/A BENEFICIAL
MORTGAGE CO OF PENNSYLVANIA
Loan Amount: 282,332.97
Dated Date: MARCH 15, 2007
Property Address: 2714 SOUTH SMEDLEY STREET, PHILADELPHIA, PA 19145-4530

Cust#: 673/2

## ALLONGE TO NOTE

PAY TO THE ORDER OF:

Assignee: **LSF9 MASTER PARTICIPATION TRUST**

(without recourse)

By:

Assignor: **BENEFICIAL CONSUMER DISCOUNT COMPANY D/B/A BENEFICIAL MORTGAGE CO
OF PENNSYLVANIA, BY CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT**

By: _____

**Sarah Kennedy, Assistant Secretary**

# Note Allonge

Statement of Purpose: This Note Allonge is attached to and made a part of the Note, for the purpose of Noteholder Endorsement to evidence a transfer of interest.



Loan Date: 3/15/2007
Original Loan Amount: $282,332.97

Lender: **BENEFICIAL CONSUMER DISCOUNT COMPANY DBA BENEFICIAL MORTGAGE CO. OF PENNSYLVANIA**

Borrower: **KIMBERLY BOCELLI & MARIO J. BOCELLI**
Property Address:  **2714 S SMEDLEY ST, PHILADELPHIA, PA 19145**

Pay to the order of

_____

Without recourse

**U.S. BANK TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC., ITS ATTORNEY-IN-FACT, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: _____

Printed Name: **STEVEN JANICEK**

Title: **VICE PRESIDENT**

(Page 1 of 10)

| eRecorded in Philadelphia, PA | Doc Id: 51653352 |
|---|---|
| 03/21/2007 01:08P | Receipt #: 583659 |
| Page: 1 of 10 | Rec Fee: $126.50 |
| Commissioner of Records | Doc Code: M |

This instrument was prepared by:

Larry Albert
_____
(Name)
2350 MacDade Blvd Holmes PA 19043
_____
(Address)

Return To:
Records Processing Services
577 Lamont Road
Elmhurst,IL 60126
(800) 547-8776

UPI # _____

07 MAR 29 AM 8: 07
RECEIVED
CPUE 3#

711741

# MORTGAGE

☐ IF BOX IS CHECKED, THIS MORTGAGE IS AN OPEN-END MORTGAGE AND SECURES FUTURE ADVANCES.

THIS MORTGAGE is made this day 15TH of MARCH 2007 , between the Mortgagor,KIM BOCELLI AKA KIMBERLY BOCELLI, AND MARIO BOCELLI,

(herein "Borrower") and Mortgagee BENEFICIAL CONSUMER DISCOUNT COMPANY D/B/A BENEFICIAL MORTGAGE CO OF PENNSYLVANIA ,
a corporation organized and existing under the laws of PENNSYLVANIA , whose address is 2350 MACDADE BLVD., HOLMES, PA 19043
(herein "Lender").

☒ The following paragraph preceded by a checked box is applicable.

WHEREAS, Borrower is indebted to Lender in the principal sum of $ 282,332.97 evidenced by Borrower's Loan Repayment and Security Agreement or Secondary Mortgage Loan Agreement dated MARCH 15, 2007 and any extensions or renewals thereof (herein "Note"), providing for monthly installments of principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable, with the balance of the indebtedness, if not sooner paid, due and payable on MARCH 15, 2037 ;

☐ WHEREAS, Borrower is indebted to Lender in the principal sum of $ _____
or so much thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated _____ and extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a credit limit stated in the principal sum above and an initial advance of $ _____ ;

TO SECURE to Lender the repayment of (1) the indebtedness evidenced by the Note, with interest thereon, including any increases if the contract rate is variable; (2) future advances under any Revolving Loan Agreement; (3) the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and (4) the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns the following described property located in the County of PHILADELPHIA Commonwealth of Pennsylvania:

SEE EXHIBIT A-LEGAL DESCRIPTION

(Page 2 of 10)

-2-

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest (including any variations in interest resulting from changes in the Contract Rate that may be specified in the Note) on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2 or as may be required by the Note and/or applicable law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment

11-11-06 MTG                                                                                           PA001307

-3-

and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 12 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this security instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the loan does not qualify as a "federally related mortgage loan" under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured)

-4-

or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Prior Mortgages and Deed of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require.

The insurance carrier providing the insurance shall be chosen by the Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or

-5-

governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the contract rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may take or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability

11-11-05 M█████████████████████████████████████████████████████████████  PA001305

-6-

of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property.** If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, (d) the creation of a purchase money security interest for household appliances, (e) a transfer to a relative resulting from the death of a Borrower, (f) a transfer where the spouse or children of the Borrower become an owner of the property, (g) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Borrower becomes an owner of the property, (h) a transfer into an inter vivos trust in which the Borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property, or (i) any other transfer or disposition described in regulations prescribed by the Federal Home Loan Bank Board, Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Mortgage unless Lender releases Borrower in writing.

If Lender does not agree to such sale or transfer, Lender may declare all of the sums secured by this Mortgage to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The

11-11-05 MTG                                                                    PA001306

-7-

notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees and costs of documentary evidence, abstracts and title reports.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof, in abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 7 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

20. Release. Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. Waiver of Homestead. Borrower hereby waives all right of homestead exemption in the Property under state or Federal law.

22. Interest Rate After Judgment. Borrower agrees the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate stated in the Note.

23. Arbitration Rider to Note. The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Mortgage.

11-11-05 MT

PA001307

-8-

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

_Kim Bocelli aka Kimberly Bocelli_
Kim Bocelli aka Kimberly Bocelli                    -Borrower

_Mario Bocelli_
Mario Bocelli                    -Borrower

I hereby certify that the precise address of the Lender (Mortgagee) is: _____

2350 MacDade Blvd Holmes PA 19043
On behalf of the Lender. By: Michael Farley          Title: BSM

COMMONWEALTH OF PENNSYLVANIA, Philadelphia          County ss:
I, Daniel F Danur          a Notary Public in and for said county and state, do hereby
certify that Kim Bocelli aka Kimberly Bocelli and Mario Bocelli

personally known to me or proven satisfactorily to be the same person(s) whose name(s)   are
subscribed to the foregoing instrument, appeared before me this day in person, and acknowledge that
        t he y      signed and delivered the said instrument as        their          free voluntary
act, for the uses and purposes therein set forth.
Given under my hand and official seal, this    15th      day of    March      , 20 07 .

COMMONWEALTH OF PENNSYLVANIA
My Co..... Notarial Seal          3/12/11
Daniel F Danur, Notary Public
Ridley Park Boro, Delaware County
My Commission Expires March 12, 2011
Member, Pennsylvania Association of Notaries

_Daniel F Danur_
Notary Public

COMMONWEALTH OF PENNSYLVANIA, _____          County ss:
I, _____ a Notary Public in and for said county and state, do hereby
certify that _____

personally known to me or proven satisfactorily to be the same person(s) whose name(s) _____
subscribed to the foregoing instrument, appeared before me this day in person, and acknowledge that
        he      signed and delivered the said instrument as _____ free voluntary
act, for the uses and purposes therein set forth.
Given under my hand and official seal, this _____ day of _____ , 20 ____ .

My Commission expires: _____          _____
                                                  Notary Public

11-11-05 MTG                                          PA001308

(Page 9 of 13)

-9-

(Space Below This Line Reserved For Lender and Recorder)

11-11-05 MTG

[Space Reserved for Recording Information]

## MODIFICATION AGREEMENT – LIMITED TERM INTEREST ONLY

**To the Borrower: This Agreement contains changes in terms which affect your Loan secured by the Property identified below. This is a legal obligation and you should read and understand the terms of this Agreement before you sign it.**

This Agreement (the "Agreement") is dated as of 10/21/2015 but effective as of the Modification Effective Date defined herein, by and between **KIMBERLY BOCELLI, MARIO J BOCELLI** (collectively, the "Borrower") and Caliber Home Loans, Inc., on behalf of the current investor (the "Servicer").

RECITALS:

A.    Borrower has a mortgage loan, account number _____ the "Loan"). This loan is secured by property commonly referred to as 2714 S SMEDLEY ST, PHILADELPHIA, PA 19145-4530 (the "Property"). The legal description to the Property may be attached to this Agreement by the Servicer if required.

B.    Borrower signed the following documents in connection with the Loan:

- Note dated 3/15/2007 in the original amount of $282,332.97 (the "Note").

- Mortgage or Deed of Trust on the Property, recorded in real property records of PHILADELPHIA County, PA (the "Mortgage").

- The Note and the Mortgage, together with all documents signed at the same time as the Note and Mortgage are called the "Loan Documents".

C.    The following amounts are outstanding under the terms of the Note:

| | |
|---|---|
| Unpaid Principal: | $265,397.10 |
| Unpaid Interest: | $11,942.94 |
| Other Unpaid Amounts: | $95,545.62 |
| Total: | $372,885.66 |

Included in the Other Unpaid Amounts is $0.00, the amount that Servicer has advanced for real property taxes, insurance, water liens, or other amounts that may have become due with respect to the Property. This is known as the "Ancillary Amount".

D.    Borrower is in default for failure to make payments or has demonstrated imminent default under the terms of the Note. Servicer either has accelerated or can accelerate the balance of the Note, which would require the Borrower to pay the Note and all Other Unpaid Amounts in full.

E.    Borrower has provided information to Servicer, and Borrower and Servicer want to modify the terms of the Note and Mortgage.

Borrower and Servicer (collectively, the "Parties"), agree as follows:

1.    **Borrower's Representations.** Borrower certifies that each of these statements is true:

A.    Borrower is experiencing a financial hardship and is either in default for failure to make payments on the Note or will shortly be in default. Borrower does not have sufficient income or access to sufficient liquid assets to make regular payments on the Note.

B.    The Property has not been condemned or is not subject to condemnation proceedings.

C.    There has been no change in the ownership of the Property since the time the Loan Documents were signed.

D.   Borrower has given Servicer information, all of which is true and accurate, regarding Borrower's income and/or liquid assets (with the exception of any information regarding Alimony and Child Support payments, unless the Borrower wants the Servicer to consider that to be income).

E.   All documents and information Borrower has provided to Servicer in connection with this Agreement are true and correct.

F.   Borrower will obtain credit counseling within 30 days of this agreement if the Servicer requires it. Borrower will provide proof of credit counseling if required by Servicer.

2.   **Conditions to Effectiveness of Agreement.**   This Agreement will only be effective after each of these events happen:

A.   Borrower must sign and return a signed original of this Agreement to Servicer on or before ___11/20/2015___.

B.   Servicer, when it receives this Agreement, will verify the accuracy of Borrower representations.

C.   If the Servicer (in its sole discretion) determines that Borrower's representations are accurate, then Servicer will execute this Agreement and it will become effective as of (the "Modification Effective Date"). If the Servicer determines that the Borrower's representations are not accurate, then the Servicer will notify the Borrower and this Agreement will not become effective.

3.   **Modification of the Loan Documents.**   If all the conditions outlined above are met, then your Loan is modified as follows:

Summary of Modification:  We may reduce the balance on which interest is accruing and we may lower the interest rate for a period of time called the Reduction Period. During the Reduction Period you will make monthly "interest only" payments (plus escrow and Ancillary payments). Certain amounts are deferred, meaning that you still owe them, but they will be collected by the Servicer at a later date. On the Reduction Period End Date, your Loan and interest rate will revert to the terms of the operative loan documents and your payment may increase. Deferred Amounts will remain deferred.

| | |
|---|---|
| New Principal Balance: | $265,397.10 |
| Modification Interest Rate: | 4.000% |
| Modification Interest Only Payment: | $884.66 |
| Monthly Escrow Payment: | $411.40 |
| Ancillary Monthly Payment: | $0.00 |
| Total New Monthly Payment: | $1,296.06 |
| Reduction Period End Date: | 11/20/2020 |
| Deferred Amount: | $106,736.83 |
| New Maturity Date (if applicable): | |
| Modification Effective Date: | 11/20/2015 |
| First Modification Payment Date: | 12/20/2015 |

These Definitions apply to the categories above:

**New Principal Balance:**  This is the principal balance Servicer has agreed to use for this modification and is used to calculate your payment. If you successfully complete this modification, this is the principal balance upon which interest will continue to accrue.

**Modification Interest Rate:**  This is the interest rate that will be in effect under this Agreement. This rate is "fixed" and will not change until the Reduction Period End Date.

**Modification Interest Only Payment:**  This is the new monthly payment and represents interest due and payable monthly on the New Principal Balance. You are not required to make a payment toward the reduction of principal until the Reduction Period End Date. Because the interest rate is "fixed" and will not change until the Reduction Period End Date, this amount will not change unless you make payments to be applied toward Principal.

**Monthly Escrow Payment:** This is your monthly payment into an escrow account and this amount is calculated in accordance with the Loan Documents and State and Federal law. This amount may change from time to time if escrow items (primarily taxes and insurance) increase or decrease.

**Ancillary Monthly Payment:** This includes some or all amounts that Servicer has advanced for real property taxes, insurance, water liens, or other amounts that may have become due with respect to the Property. Servicer has spread the repayment of Ancillary Amounts over a period of _____ months.

**Total New Monthly Payment:** This is the sum of the Modification Interest Only Payment, Monthly Escrow Payment and Ancillary Monthly Payment.

**Reduction Period End Date:** This is the date on which the Modification Interest Rate will revert to the interest rate provided for in the operative loan documents.

**New Maturity Date:** This is the date on which the Note matures.

**Modification Effective Date:** This is the date that interest begins to accrue at the rate set forth in this Agreement.

**First Modification Payment Date:** This is the date on which your first modified payment is due.

**PLEASE NOTE: On the Reduction Period End Date, this Agreement will terminate and the interest rate of your Loan will revert to those in your Loan Documents. This means that your payment may increase because it will include principal and will be calculated using the interest rate provided for in the operative loan documents.**

**Deferred Amount:** The Deferred Amount consists of amounts that are due under the terms of the Note and Loan Documents, but which Servicer has agreed to not collect until payment in full of the debt or the New Maturity Date, whichever happens first. The Deferred Amount may consist of some principal, and can consist of interest due but not paid, outstanding Servicer fees or charges, and advances made by the servicer.

**PLEASE NOTE: The Deferred Amounts will be collected by the Servicer at the earlier of payment in full of the Note or the New Maturity Date. If the Borrower sells the Property or refinances the Loan, the Borrower will be required to pay this Deferred Amount in addition to any other amounts due at that time. Otherwise, these amounts are due on the New Maturity Date and are required to be paid at that time. This means that if the Borrower makes all the payments required by this Agreement the Deferred Amount will still be owed to Servicer.**

4. **Events of Default.** Borrower will be in default and Servicer may terminate this Agreement, if:

   A. Borrower fails to make any payments required by this Agreement within 15 days of any due date for a payment, <u>or</u>

   B. Borrower fails to comply with any other terms or conditions created by this Agreement or the Loan Documents.

5. **Additional Agreements.** The Parties further agree to and acknowledge each of the following:

   A. All persons who signed the Loan Documents must sign this document in person or by an authorized representative (unless an original signor is deceased). Borrower, by signing this Agreement, will be presumed to have read this Agreement and understand the terms of this Agreement.

   B. This Agreement takes the place of any other agreement that Borrower may have or have had in the past with Servicer including any prior modification or forbearance agreements.

C.    This Agreement constitutes notice that any waiver by the Lender, Noteholder or Servicer as to payment of taxes, insurance and other escrow items has been revoked. Where allowed under the Loan Documents, this Agreement established an escrow account for the Loan and Borrower will make monthly payments to an escrow account established by Servicer. These payments will be calculated as required by the Loan Documents. Servicer will not pay Borrower interest on the escrow deposit unless required by State or Federal law.

D.    The Loan Documents are properly and duly executed by all parties who were required to execute them and are a valid, binding obligation of the parties to those documents, and each Loan Document is enforceable in accordance with its terms.

E.    Except as specifically modified by this Agreement, the terms of the Loan Documents are in full force and effect.  This Agreement does not replace or release any of the Loan Documents, except as specifically modified by this Agreement.

F.    If the Property is sold, transferred or conveyed to any person or entity without the consent of the Servicer, then if allowed by State or Federal law, Servicer may terminate this Agreement, and require that the balance of the Note together with any fees and other unpaid amounts be repaid in full (meaning that Servicer can accelerate the Note.)  In this event, Servicer will give you thirty (30) days notice of Acceleration and if the Note has not been paid in full after that time, Servicer may pursue the remedies in the Mortgage, including foreclosure.

G.    Borrower may not assign and no person other than the Borrower may assume Borrower's rights under this Agreement or the Loan Documents.

H.    The Servicer may choose to waive a default under this Agreement or the Loan Documents, but a waiver of any event of default will not be understood to waive similar defaults in the future or other defaults that may occur.

I.    Borrower hereby confirms that this Agreement represents the entire agreement between Borrower and Servicer with respect to the subject matter herein, and that no other prior terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning the modification of the Loan Documents that are inconsistent with the terms of this Agreement shall affect the Loan Documents or negate the operation and effect of this Agreement.

J.    Any expenses incurred in connection with the servicing of the Loan, but not yet charged to the Loan account as of the date of this Agresment, may be charged to the Loan and secured by the Mortgage after the Modification Effective Date.

K.    If Servicer makes advances for payment of taxes or insurance, accrues interest, or posts late or other fees to the Loan, each of which is permissible under the Loan Documents to add to amounts outstanding under the Note, between the date Servicer generates this Agreement and the First Modification Payment Date, then these amounts will either become Deferred Amounts under the Loan Documents or will be offset with a portion of Good Faith funds, if applicable.  Any addition of Deferred Amounts or offset of advances pursuant to this section will be reflected on Borrower's periodic statement.

L.    Borrower will execute such other documents or papers as may be reasonably necessary or required by Servicer to effectuate the terms and conditions of this Agreement.

M.    Borrower is advised that forgiveness of debt (if applicable) may have adverse credit and legal consequences and may result in taxable income to Borrower.  Borrower is advised to seek advice from an attorney, certified public accountant or other expert regarding potential consequences of any principal reduction.  Borrower hereby acknowledges that Servicer is giving Borrower no such advice.

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.**

## BALLOON PAYMENT DISCLOSURE

This Modification Agreement defers certain amounts, which creates a balloon that will be collected by the Servicer at the earlier of payment in full of the Note or the maturity date. Because these amounts are not included in your regular scheduled payments, even if you make all payments required by this agreement, the loan will not be paid in full at maturity. You therefore may be required to pay the entire outstanding balance in a single payment at the loan maturity date. Neither the Servicer nor Lender has any obligation to refinance or to offer you a new loan at maturity. You may have to seek new third-party financing and incur other additional financing costs at the time the balloon becomes due.

Whereof, Servicer and Borrower have executed this Agreement as of the dates indicated below.

KIMBERLY BOCELLI

Date: May. 4, 2015

MARIO J BOCELLI

Date: May. 5, 2015

Caliber Home Loans, Inc., on behalf of the current investor

By:

Date: 11.7.15

Sean Geiss
Caliber
Loss Mitigation Manager

Recording Requested By:
**T.D. SERVICE COMPANY**

This Document Recorded
08/01/2014
12:18PM
Doc Code: A        Commissioner of Records, City of Philadelphia

Doc Id: 52611765
Receipt #: 1390567
Rec Fee: 208.00

Prepared By:
**T.D. Service Company**
**4000 W Metropolitan Dr Ste 400**
**Orange, CA  92868**
**(714) 543-8372, DAWNA HANSON**

And When Recorded Mail To:
**T.D. Service Company**
**4000 W Metropolitan Dr Ste 400**
**Orange, CA  92868**
**(714) 543-8372**

Property Address: **2714 SOUTH SMEDLEY STREET, PHILADELPHIA, PA 19145-4530.**
_____ Space above for Recorder's use _____

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, **BENEFICIAL CONSUMER DISCOUNT COMPANY D/B/A BENEFICIAL
MORTGAGE CO OF PENNSYLVANIA, C/O CALIBER HOME LOANS, INC. 13801 WIRELESS
WAY, OKLAHOMA CITY, OK  73134-2550,** hereby assign and transfer to **LSF8 MASTER
PARTICIPATION TRUST, C/O CALIBER HOME LOANS, INC. 13801 WIRELESS WAY,
OKLAHOMA CITY, OK  73134-2550,** all its right, title and interest in and to said Mortgage in the amount of
**$282,332.97,** recorded in the State of **PENNSYLVANIA, CITY of PHILADELPHIA,** County of
**PHILADELPHIA** Official Records, dated **MARCH 15, 2007** and recorded on **MARCH 21, 2007, as
Instrument No. 51653352, in Book No. ---, at Page No. ---.**
Executed by: **KIM BOCELLI AKA KIMBERLY BOCELLI AND MARIO BOCELLI** (Original Mortgagor).
Original Mortgagee:  **BENEFICIAL CONSUMER DISCOUNT COMPANY D/B/A BENEFICIAL
MORTGAGE CO OF PENNSYLVANIA**
Legal Description: **See Attached Exhibit.**

Date: **JUL 2 5 2014**

**BENEFICIAL CONSUMER DISCOUNT COMPANY D/B/A BENEFICIAL MORTGAGE CO OF
PENNSYLVANIA, BY CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT**

Power of Attorney Dated 12/11/13 Recorded on 05/06/14 As Instrument # 52778442.

By: _____

Sarah Kennedy, Assistant Secretary

State of        **CALIFORNIA**                    }
County of       **ORANGE**                        } ss.

On **JUL 2 5 2014** before me, **A. Fuentes**, a Notary Public, personally appeared Sarah Kennedy, who acknowledged herself/himself to be the **Assistant Secretary** of **BENEFICIAL CONSUMER DISCOUNT COMPANY D/B/A BENEFICIAL MORTGAGE CO OF PENNSYLVANIA, BY CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____

(Notary Name): A. Fuentes

A. FUENTES
Commission # 2041901
Notary Public - California
Orange County
My Comm. Expires Sep 19, 2017

I hereby certify that the precise address of the within named assignee is: C/O CALIBER HOME LOANS, INC. 13801 WIRELESS WAY, OKLAHOMA CITY, OK  73134-2550

By: _____

Sarah Kennedy, Assistant Secretary

EXHIBIT A

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE MESSUAGE OR
TENEMENT THEREON ERECTED.

SITUATE ON THE WEST SIDE OF SMEDLEY STREET AT THE DISTANCE
OF ONE HUNDRED AND EIGHTEEN FEET NINE INCHES SOUTHWARD FROM
THE SOUTH SIDE OF OREGON AVENUE. IN THE TWENTY-SIXTH WARD OF
THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID SMEDLEY STRECT,
FIFTEEN FEET THREE INCHES AND EXTENDING OF THAT WIDTH IN
LENGTH OR DEPTH WESTWARD BETWEEN LINES PARALLEL WITH SAID
OREGON AVENUE SEVENTY FEET TO A CERTAIN THREE FEET WIDE
ALLEY, EXTENDING NORTHWARDLY AND COMMUNICATING WITH A
CERTAIN OTHER THREE FEET WIDE ALLEY WHICH LEADS EASTWARD AND
WESTWARD FROM SAID SMEDLEY STREET TO SEVENTEENTH STREET AND
SOUTHWARD INTO A CERTAIN THREE FEET WIDE ALLEY WHICH LEADS
SOUTHEASTWARD AND COMMUNICATES WITH A CERTAIN THREE FEET
WIDE ALLEY WHICH EXTENDS NORTHEASTWARD INTO SMEDLEY STREET
AND SOUTHWESTWARD INTO SEVENTEENTH STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND
PRIVILEGE OF THE SAID THREE FEET WIDE ALLEY AS AND FOR A
PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER, FOREVER.

BRT 261345900.   ADDRESS: 2714 S SMEDLEY ST;  PHILADELPHIA,
PA 19145   TAX MAP OR PARCEL ID NO.: 261345900

From: LSF8 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A.,
To: DLJ MORTGAGE CAPITAL, INC.

PREPARED BY AND RETURN TO:

## Assignment of Mortgage

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **LSF8 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A.,** By Caliber Home Loans, Inc Its Attorney in Fact 13801 Wireless Way, Oklahoma City OK 73134 (Assignor) by these presents does assign, and set over, without recourse, to **DLJ MORTGAGE CAPITAL, INC. 11 MADISON AVENUE, 4TH FLOOR, NEW YORK NY 10010** (Assignee) the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **KIM BOCELLI AKA KIMBERLY BOCELLI, AND MARIO BOCELLI** to BENEFICIAL CONSUMER DISCOUNT COMPANY D/B/A BENEFICIAL MORTGAGE CO OF PENNSYLVANIA.    Said mortgage Dated: 3/15/2007 is recorded in the State of PA, County of Philadelphia on 3/21/2007, as Instrument 51653352 AMOUNT: $ 282,332.97 SEE ATTACHED EXHIBIT A

Property Address: 2714 S SMEDLEY ST, PHILADELPHIA, PA, 19145-4530

IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed by its proper signatory.
Executed on: January 31, 2018
LSF8 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A., By Caliber Home Loans, Inc Its Attorney in Fact

By: _____

Connie M. Riggsby, Vice President

The Assignee hereby certifies that the precise address of the within named DLJ MORTGAGE CAPITAL, INC. is 11 MADISON AVENUE, 4TH FLOOR, NEW YORK NY 10010.

PA  Philadelphia

CALIBER/MADRID5/FBC

**The Power of Attorney was filed in Philadelphia County, Pennsylvania on 08/24/2016 in INST: 53102737.**

State of TX, County of Tarrant

On 01/31/2018, before me, the undersigned, personally appeared Connie M. Riggsby, who acknowledged that he/she is Vice President of/for By Caliber Home Loans, Inc Its Attorney in Fact LSF8 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A., and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of LSF8 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A., .



JANELL JUNKIN
Notary Public, State of Texas
My Commission Expires
August 19, 2019

Notary public, Janell Junkin
My commission expires: August 19, 2019

PA  Philadelphia                    CALIBER/MADRID5/FBC

# Exhibit A

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE MESSUAGE
OR TENEMENT ERECTED.

SITUATE ON THE WEST SIDE OF SMEDLY STREET AT THE DISTANCE
OF ONE HUNDRED AND EIGHTEEN FEET NINE INCHES SOUTHWARD FROM
THE SOUTH SIDE OF OREGON AVENUE, IN THE TWENTY-SIXTH WARD
OF THE CITY OF PHILADELPHIA

CONTAINING IN FRONT OR BREADTH ON THE SAID SMEDLEY STREET,
FIFTEEN FEET THREE INCHES AND EXTENDING OF THAT WIDTH IN
LENGTH OR DEPTH WESTWARD BETWEEN LINES PARALLEL  WITH SAID
OREGON AVENUE SEVENTY FEET TO A CERTAIN THREE FEET WIDE
ALLEY, EXTENDING NORTHWARDLY AND COMMUNICATING WITH A
CERTAIN OTHER THREE FEET WIDE ALLEY WHICH LEADS EASTWARD
AND WESTWARD FROM SAID SMEDTLY STREET TO SEVENTEENTH STREET
AND SOUTHWARD INTO A CERTAIN THREE FEET WIDE ALLEY WHICH
LEADS SOUTHEASTWARD AND COMMUNICATES WITH A CERTAIN THREE
FEET WIDE ALLEY EXTENDS NORTHEASTWARD INTO SMEDLTY STREET
AND SOUTHWESTWARD INTO SEVENTEENTH STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND
PRIVILEGE OF THE SAID THREE FEET WIDE ALLEY AS AND FOR A
PASSAGEWAY AND WATERCOURSE AT ALL TIME HEREAFTER, FOREVER

BRT 261345900, ADDRESS; 2714 S SMEDLEY ST; PHILADELPHIA, PA
19145
TAX MAP OR PARCEL ID NO.: 261345900.



CALIBER/MADRIDS/PBC

Philadelphia County, PA

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

Sver Ln No

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **DLJ MORTGAGE CAPITAL, INC.**, whose address is **11 MADISON AVENUE 4TH FLOOR, NEW YORK, NY 10010**, (ASSIGNOR), does hereby grant, assign and transfer to
_____, whose address is **7114 E STETSON DR., Suite 250** (ASSIGNEE),
its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.
**Scottsdale, AZ 85251**

Date of Mortgage: 3/15/2007
Original Loan Amount: **$282,332.97**

**U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE IGLOO SERIES V TRUST**

Executed by (Borrower(s)): **KIM BOCELLI FKA KIMBERLY BOCELLI & MARIO BOCELLI**
Original Lender: **BENEFICIAL CONSUMER DISCOUNT COMPANY DBA BENEFICIAL MORTGAGE CO. OF PENNSYLVANIA**
Filed of Record: In Book/Liber/Volume N/A, Page N/A,
Document/Instrument No: **51653352** in the Recording District of **PHILADELPHIA, PA**, Recorded on **3/21/2007**.
**MUNICIPALITY: CITY OF PHILADELPHIA, 26TH WARD**

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **2714 S SMEDLEY ST, PHILADELPHIA, PA 19145**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **MAR 2 1 2018**

**DLJ MORTGAGE CAPITAL, INC.**

By: **S. JOHNSTON**
Title: **VICE PRESIDENT**

Witness Name: **Karrey Green**

I hereby certify the precise address of the within named _____ (Assignee) is
**7114 E Stetson Dr., Suite 250, Scottsdale, AZ 85251**

**U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE IGLOO SERIES V TRUST**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        **UTAH**
County of       **SALT LAKE**

On ____**MAR 2 1 2018**____, before me, **CONSTANCE BAILEY**, a Notary Public, personally appeared **S.
JOHNSTONE, VICE PRESIDENT** of/for **DLJ MORTGAGE CAPITAL, INC.**, personally known to me, or who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **UTAH** that
the foregoing paragraph is true and correct. I further certify S. JOHNSTONE, signed, sealed, attested and delivered
this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **CONSTANCE BAILEY**
My commission expires: **6/5/2021**

CONSTANCE BAILEY
Notary Public  State of Utah
My Commission Expires on:
June 5, 2021
Comm. Number: 695241

## EXHIBIT "A"

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE MESSUAGE OR
TENEMENT THEREON ERECTED.

SITUATE ON THE WEST SIDE OF SINEDLEY STREET AT THE DISTANCE
OF ONE HUNDRED AND EIGHTEEN FEET NINE INCHES SOUTHWARD FROM
THE SOUTH SIDE OF OREGON AVENUE, IN THE TWENTY-SIXTH WARD OF
THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID SMEDLEY STRECT,
FIFTEEN FEET THREE INCHES AND EXTENDING OF THAT WIDTH IN
LENGTH OR DEPTH WESTWARD BETWEEN LINES PARALLEL WITH SAID
OREGON AVENUE SEVENTY FEET TO A CERTAIN THREE FEET WIDE
ALLEY, EXTENDING NORTHWARDLY AND COMMUNICATING WITH A
CERTAIN OTHER THREE FEET WIDE ALLEY WHICH LEADS EASTWARD AND
WESTWARD FROM SAID SMEDLEY STREET TO SEVENTEENTH STREET AND
SOUTHWARD INTO A CERTAIN THREE FEET WIDE ALLEY WHICH LEADS
SOUTHEASTWARD AND COMMUNICATES WITH A CERTAIN THREE FEET
WIDE ALLEY WHICH EXTENDS NORTHEASTWARD INTO SMEDLEY STREET
AND SOUTHWESTWARD INTO SEVENTEENTH STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND
PRIVILEGE OF THE SAID THREE FEET WIDE ALLEY AS AND FOR A
PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER, FOREVER.

BRT 261345900.   ADDRESS: 2714 S SMEDLEY ST;   PHILADELPHIA,
PA 19145   TAX MAP OR PARCEL ID NO.: 261345900

## Assignment Chain

| | |
|---|---|
| Assigned From: | LSF8 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A., BY CALIBER HOME LOANS, INC ITS ATTORNEY IN FACT |
| To: | DLJ MORTGAGE CAPITAL, INC. |
| AOM Recording Details: | Recorded 03/15/2018; Book: N/A; Page: N/A; Instrument: 53339576 |

Prepared By and Return To:
**Karine Sharma**
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

_____ Space above for Recorder's use _____

### ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE IGLOO SERIES V TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE FOR CABANA SERIES V TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **3/15/2007**
Original Loan Amount: **$282,332.97**
Executed by (Borrower(s)): **KIM BOCELLI AKA KIMBERLY BOCELLI & MARIO BOCELLI**
Original Lender: **BENEFICIAL CONSUMER DISCOUNT COMPANY D/B/A BENEFICIAL MORTGAGE CO OF PENNSYLVANIA**
Filed of Record: In Book/Liber/Volume N/A, Page N/A
Document/Instrument No: **51653352** in the Recording District of **Philadelphia, PA**, Recorded on **3/21/2007**.

Legal Description & Chain Exhibit: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **2714 S SMEDLEY ST, PHILADELPHIA, PA 19145**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **12/9/2022**

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE IGLOO SERIES V TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **KIMBERLY KELLY**                                    Witness Name: **MARIO REYES**
Title: **VICE PRESIDENT**

POA BATCH# 12552
POA WAS RECORDED IN PHILADELPHIA COUNTY, PA
ON 03/23/2022 /INST: 540006543

I hereby certify the precise address of the within named **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE FOR CABANA SERIES V TRUST** (*Assignee*) is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251.**

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of        **FLORIDA**
County of      **PINELLAS**

On **12/9/2022**, before me, **TRACY SCHMIDT**, a Notary Public, personally appeared **KIMBERLY KELLY, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE IGLOO SERIES V TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that KIMBERLY KELLY, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **TRACY SCHMIDT**
My commission expires: **08/08/2026**

TRACY  SCHMIDT
Notary Public
State of Florida
Comm# HH298555
Expires 8/8/2026

## EXHIBIT "A"

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE MESSUAGE OR
TENEMENT THEREON ERECTED.

SITUATE ON THE WEST SIDE OF SINEDLEY STREET AT THE DISTANCE
OF ONE HUNDRED AND EIGHTEEN FEET NINE INCHES SOUTHWARD FROM
THE SOUTH SIDE OF OREGON AVENUE, IN THE TWENTY-SIXTH WARD OF
THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID SMEDLEY STRECT,
FIFTEEN FEET THREE INCHES AND EXTENDING OF THAT WIDTH IN
LENGTH OR DEPTH WESTWARD BETWEEN LINES PARALLEL WITH SAID
OREGON AVENUE SEVENTY FEET TO A CERTAIN THREE FEET WIDE
ALLEY, EXTENDING NORTHWARDLY AND COMMUNICATING WITH A
CERTAIN OTHER THREE FEET WIDE ALLEY WHICH LEADS EASTWARD AND
WESTWARD FROM SAID SMEDLEY STREET TO SEVENTEENTH STREET AND
SOUTHWARD INTO A CERTAIN THREE FEET WIDE ALLEY WHICH LEADS
SOUTHEASTWARD AND COMMUNICATES WITH A CERTAIN THREE FEET
WIDE ALLEY WHICH EXTENDS NORTHEASTWARD INTO SMEDLEY STREET
AND SOUTHWESTWARD INTO SEVENTEENTH STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND
PRIVILEGE OF THE SAID THREE FEET WIDE ALLEY AS AND FOR A
PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER, FOREVER.

BRT 261345900.   ADDRESS: 2714 S SMEDLEY ST;  PHILADELPHIA,
PA 19145   TAX MAP OR PARCEL ID NO.: 261345900

**Assignment Chain**

Assigned From:   LSF8 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A.,
BY CALIBER HOME LOANS, INC ITS ATTORNEY IN FACT

To:   DLJ MORTGAGE CAPITAL, INC.

AOM Recording   Recorded 03/15/2018; Book: N/A; Page: N/A; Instrument: 53339576
Details:

*Exhibit B*

Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | **Kimberly** | **Anne** | **Bocelli** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **Eastern** District of **Pennsylvania**

Case number (if known) _____

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property     12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. **Do any creditors have claims secured by your property?**
   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   ☑ Yes. Fill in all of the information below.

**Part 1:     List All Secured Claims**

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** | Column C<br>**Unsecured portion**<br>If any |
|---|---|---|---|

| 2.1 | | | | |
|---|---|---|---|---|
| **Servicing Corporation** | Describe the property that secures the claim: | $488,837.15 | $236,320.00 | $252,517.15 |
| Creditor's Name | | | | |
| **323 5th Street** | **2714 S. Smedley Street Philadelphia, PA 19145** | | | |
| Number     Street | | | | |
| | As of the date you file, the claim is: Check all that apply. | | | |
| **Eureka, CA 95501** | ☐ Contingent | | | |
| City     State     ZIP Code | ☐ Unliquidated | | | |
| **Who owes the debt?** Check one. | ☐ Disputed | | | |
| ☑ Debtor 1 only | **Nature of lien.** Check all that apply. | | | |
| ☐ Debtor 2 only | ☑ An agreement you made (such as mortgage or secured car loan) | | | |
| ☐ Debtor 1 and Debtor 2 only | ☐ Statutory lien (such as tax lien, mechanic's lien) | | | |
| ☐ At least one of the debtors and another | ☐ Judgment lien from a lawsuit | | | |
| ☐ **Check if this claim relates to a community debt** | ☐ Other (including a right to offset) _____ | | | |
| Date debt was incurred _____ | Last 4 digits of account number ___ ___ ___ ___ | | | |

| Add the dollar value of your entries in Column A on this page. Write that number here: | $488,837.15 | |
|---|---|---|